114

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

JUN 17   4 20 PM '03

CLERK

BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| HARLAND A. MACIA, III, D/B/A CATAMOUNT SOFTWARE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:00-CV-299 |
| MICROSOFT CORPORATION, INTUIT, INC., and MECA SOFTWARE, LLC., | ) ) ) | |
| Defendants. | ) ) | |

## MICROSOFT'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION

### I.      INTRODUCTION

Pursuant to Rule 7.2(b) of the Vermont Local Rules of Procedure, Microsoft respectfully

requests that the Court reconsider its June 3, 2003, Opinion and Order ("Order"), which denied

Microsoft's motion for summary judgment on the complaint.  Microsoft's basis for requesting

reconsideration is that the Court apparently did not address Microsoft's defense that it is entitled

to use the generic term "for Pocket PC" in connection with its marks Microsoft® MONEY and

MONEY.

Reconsideration in the Second Circuit is appropriate where a party might reasonably

expect the Court to alter its conclusion based on evidence that arguably was overlooked.

AeroGroup Int'l, Inc. v. Marlboro Footworks, Ltd., 1997 U.S. Dist. LEXIS 6252, at *12

(S.D.N.Y. 1997), quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Here,

undisputed evidence of the genericness of "Pocket PC" for computer hardware should have

resulted in the conclusion that Microsoft® MONEY for Pocket PC cannot infringe Catamount's

alleged rights in PocketMoney.

174

## II.   ARGUMENT

### A.   Trademark Infringement Cannot Be Based On the Use of a Generic Term

As Microsoft previously set forth (12/16/02 Br. at 8-11 and 15), trademark infringement cannot be based on the use of a generic term.  Determination that a term is generic is dispositive of an infringement claim.  Time Inc. v. Petersen Publishing Co., L.L.C., 976 F.Supp. 263 (S.D.N.Y. 1997) (finding that plaintiff's TEEN trademark for a magazine devoted to teenagers did not give it the exclusive right to the generic word "teen" for the same goods is dispositive of infringement issue, thus, defendant was entitled to use the mark TEEN PEOPLE for a teen magazine); Small Business Assistance Corp. v. Clear Channel Broadcasting, Inc., et.al., 210 F.3d 278, 279 (5th Cir. 2000) (plaintiff's mark UNCLE SAM JAM for a summer concert event cannot be infringed by defendant's use of SUMMER JAM, a generic term for the same type of events). Therefore, a finding that "Pocket PC" is generic precludes a conclusion of liability under the Lanham Act.

The Lanham Act allows a party to use a generic term so that it may identify its goods. See, American Cyanamid v. Connaught Laboratories, Inc., 800 F.2d 306, 308 (2nd Cir. 1986) (held that "HIB" is generic for a disease and that use of the mark HibVAX for a vaccine did not infringe the mark HIBMUNE also for a vaccine: "a trademark holder cannot appropriate generic or descriptive terms for its exclusive use, and trademark infringement finding thus cannot be based on the use of a generic or descriptive term").  In that case, the court addressing the nature of generic terms stated:

> Consumers will not benefit, however, if trademark law prevents competitors from using generic or descriptive terms to inform the public of the nature of their product.  Were the first user of a generic or descriptive term, say 'bicycle,' able to exclude later entrants from use of that term, the former would be able not only to identify itself as the maker of the bicycle and to capitalize on whatever good will it has built

up – legitimate purposes of trademark protection – but also to impair the ability of competitors to describe their product as bicycles – a wholly counterproductive result so far as consumers are concerned. See, e.g., Bada v. Montgomery Ward & Co., 426 F.2d 8, 11 (9th Cir.) ("word which is in its primary meaning merely descriptive of the goods to which it is applied may not be appropriated as the exclusive trademark of a single seller, since one competitor will not be permitted to impoverish the language of commerce by preventing his fellows from fairly describing their own goods"), cert. denied, 400 U.S. 916 S.Ct. 174, 27 L.Ed.2d 155 (1970).

Id. (case cited in Microsoft's 12/16/02 Br. at 9 and 15); see also, Bristol-Myers Squibb Co. v. McNeil – P.P.C., Inc., 973 F.2d 1033, 1039-1041 (2nd Cir. 1992) (plaintiff used the mark EXEDRIN PM and sought injunctive relief against defendant's use of TYLENOL PM - court properly declined to enjoin defendant because "PM" is descriptive of night-time medicine and thus available for use by competitors).

### B. The Evidence That "Pocket PC" is Generic for Devices is Undisputed

Evidence of the genericness of "Pocket PC" is found in Catamount's own usage of the term. The Court found it undisputed that "Catamount uses the terms 'PocketMoney for Pocket PC' and 'PocketMoney for Windows CE, Pocket PC Edition' to describe the software to consumers." (Order at 4). Catamount further admits that "Pocket PC" is used to describe the pocket-sized personal computers of numerous manufacturers, albeit those running on a Microsoft operating system. (Merikas Affid. Exh. D, 12/16/02 Br.; Cat. Stmt. Disp. Facts, ¶27). Catamount states, "[f]or both 'PC' and 'Pocket PC' the world understands those terms to mean a desktop or handheld computer running an operating system developed and marketed by Microsoft regardless of what company manufactures the hardware." (Cat. Br. at 22, emphasis added). Thus, Pocket PC can be only a generic term for a category of devices. See, Ale House Management, Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 141 (4th Cir. 2000) (generic terms refer to the genus or class of which the product is a member and are not entitled to protection –

-3-

"ale house" is generic of establishments that serve beer and ale); <u>Financial Matters, Inc. v.</u>

<u>Pepsico, Inc.</u>, 1993 U.S. Dist. LEXIS 13294, at *10 (S.D.N.Y. 1993) (finding that multiple

entities holding rights in a trademark is at odds with the function of trademark law to identify a

<u>single</u> source of origin).

Additional undisputed evidence further establishes the genericness of "Pocket PC" for

computer hardware. Thomas Jaros, developer of Catamount's PocketMoney software for the

Pocket PC (Cat. Stmt. Disp. Facts, ¶31), markets his own software called "Seymour for Pocket

PC." (Merikas Affid. Exh. E). Mr. Jaros testified that he uses the phrase "Pocket PC" to

describe the hardware on which certain of his software is designed to run because, in his words,

"[I]t is the only name that I associate with this particular device." (Merikas Affid. Exh. E: Jaros

Tr. at 40-41, 12/16/02 Br.).   Mr. Jaros further testified (Merikas Affid. Exh. E: Jaros Tr. at 46.

12/16/02 Br.):

> Q.   And so why do you use the phrase For Pocket PC?
>
> A.   As I am trying to identify the form factor that the software runs on.
>
> Q.   And do you consider that important?
>
> A.   Well, yes, if there is a – if there is a user out there who owns a ---
>      owns a Windows CE device or a Pocket PC, a form factor of
>      Windows CE, I want them to know that my software will run on
>      that particular form factor so I use that as – as is the identifier. . . .

Mr. Jaros also admitted that the term "Pocket PC" has been generally adopted in the

industry to identify certain hardware. (Merikas Affid. Exh. E, 12/16/02 Br.). The Court, for

example, repeatedly used "Pocket PC" to refer to a category of devices, and not as a source

indicator or trademark. (<u>See</u>, <u>Order</u>, at 3-4, 16 and 21).[1]

---

[1] Although the Court sometimes referred to certain computer devices as PDAs (Order at 3), Catamount admits that the term "PDA" is no longer commonly used in the computer industry. (O'Brien Fourth Affid. Exh. 4: Macia Tr. at 17).

Additional undisputed evidence shows that the term "Pocket PC" has been used in connection with the computers of at least 26 manufacturers. (O'Brien Dec. Exh. E, 12/28/00 Br.). "Pocket PC" or "pocket PC" was used in connection with the computer devices of 14 or more manufacturers prior to Microsoft's release of Microsoft® MONEY for Pocket PC. (O'Brien Fourth Affid. Exh. 1, 2/27/03 Br.). A term so lacking in source identification cannot be anything but generic. See, e.g., Financial Matters, Inc. v. Pepsico, Inc., 1993 U.S. Dist. LEXIS 13294, at *10 (S.D.N.Y. 1993).

### C.     State Law Claims

There is sparse Vermont authority on the state law claims raised by Catamount. Nonetheless, several Circuits have determined, and Catamount has not disputed, that state claims are congruent to claims made under the Lanham Act. M.B.H. Enterprises, Inc. v. Woky, Inc., 633 F.2d 50, 53 (7th Cir. 1980) (claim for trademark disparagement may not succeed if the infringement count fails); James Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) (the test for California state common law claim of unfair competition corresponds to claims made under the Lanham Act); Children's Factory, Inc. v. Benee's Toys, Inc., 160 F.3d 489, 491 n.2 (8th Cir. 1998) (discussion of Missouri common law of unfair competition unnecessary due to Lanham Act analysis). Since Catamount cannot sustain an action under the Lanham Act, its state claims must also fall.

## III.   CONCLUSION

Microsoft is entitled to summary judgment based on previously cited authority that a

party cannot be enjoined from use of a generic term.  This authority warrants a conclusion that

Microsoft cannot be liable to Catamount for use of Microsoft® MONEY for Pocket PC.

Date:   June 17, 2003

Respectfully submitted,

PATTISHALL, McAULIFFE, NEWBURY,
  HILLIARD & GERALDSON

John Thompson Brown
Demetra Merikas
Mark P. McKenna
311 South Wacker Drive, Suite 5000
Chicago, Illinois  60606
(312) 554-8000
(312) 554-8015 (fax)

PAUL, FRANK & COLLINS

By:

John T. Sartore
Federal ID No. 000406116
Robert S. DiPalma
Federal ID No. 000380088
One Church Street, 5th Floor
Burlington, Vermont  05402-1307
(802) 658-2311

Counsel for Microsoft

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MICROSOFT'S BRIEF IN

SUPPORT OF MOTION FOR RECONSIDERATION has been served upon Markus Brakhan,

Esq., 44 Church Street, Suite 1, Burlington, Vermont 05402, this 17th day of June 2003, by first

class mail, postage prepaid.

John T. Sartore

330463_v1: 6975-00001

-6-