IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2004 SEP 13 PM 3 28
CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| HARLAND A. MACIA, III, D/B/A CATAMOUNT SOFTWARE, Plaintiff<br><br>v.<br><br>MICROSOFT CORPORATION, Defendants | Civil Action No.<br>2:00-CV-299 |

## CATAMOUNT'S RESPONSE TO MICROSOFT'S MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 52

NOW COMES Plaintiff Harland A. Macia, III, d/b/a Catamount Software ("Catamount") and responds to Microsoft's Brief in Support of its Rule 52 Motion.

### I. Introduction

Catamount's Mid-Trial Memorandum addresses the most important issues raised in Microsoft's Brief. However, Microsoft's Brief makes several misstatements that warrant correction.

In particular, Microsoft:

* Mischaracterizes the evidentiary standard required to demonstrate likelihood of confusion for reverse confusion under the Lanham Act;

* Mischaracterizes the law of damages for trademark infringement by reverse confusion;

* Has presented evidence proving its bad faith intent to deprive Catamount of its POCKETMONEY trademark; and

* Is incorrect in its assertion that no new evidence has been presented at trial.

## II. The Proper Evidentiary Standard Required to Demonstrate Likelihood of Confusion Under the Lanham Act

It is axiomatic that proof of "likelihood of confusion" is the "keystone" of a successful claim of trademark infringement. *McCarthy* § 23:1. But the type of confusion that causes the harm in reverse confusion cases is simply different than that applied to cases of trademark infringement by forward confusion. Actionable reverse confusion happens when a trademark chosen by a second user "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" between the parties. 15 U.S.C. §§ 1114(1), 1125(a) (for registered and unregistered marks, respectively) *Banff v. Federated Dept. Stores, Inc.*, 841 F.2d 486 (2d Cir. 1988).

Such "likelihood" of confusion may not be merely "possible," it must be "probable." But such evidence need not be "actual;" although evidence of actual confusion, such as that presented by Catamount, is the best possible evidence. Pl.Tr.Ex. 22. *See, generally*: *McCarthy* §§ 23:12-18.

Catamount's evidence showed actual confusion that took place in the U.S., either when people downloaded POCKETMONEY from Catamount's U.S.-based website, posted to Microsoft-hosted newsgroups, or published in U.S.-based computer media. Pl.Tr.Ex. 22, 30. All of these instances show confusion as to the affiliation, connection or association between Catamount and Microsoft. This is classic actionable reverse confusion as

exemplified in the *Big O* case. *Big O v. Goodyear*, 408 F.Supp. 1219 (D.Colo. 1976), 561 F.2d 1365 (10th Cir. 1977); McCarthy § 23:10.[1]

Microsoft's own evidence shows that it has saturated the market with advertising of its MONEY product and POCKET PC form factor. This corroborates Catamount's evidence that it has lost its product identity, control over its goodwill and reputation, and the ability to move into new markets. MSTr.Ex. A, B, C, K, L, N. *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960 (6th Cir. 1987), *Sands, Taylor and Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992) cert. den. 507 U.S. 1042, 113 S.Ct. 1879 (1993).

### III. The Proper Law of Damages for Trademark Infringement by Reverse Confusion

Professor McCarthy's treatise on Trademarks and Unfair Competition posits that:

> In trademark infringement and unfair competition cases, there are **at least** five ways of measuring monetary recovery.

---

[1] Microsoft's allegation that Catamount infringes its MONEY trademark is false. First, these two marks are easily distinguishable. Second, Catamount had used POCKETMONEY for six years prior to Microsoft's release of MONEY FOR POCKET PC. Microsoft has not met its burden of proof to show that it had acquired secondary meaning in the MONEY trademark at the time Catamount adopted POCKETMONEY. Microsoft has also not met its burden of proof that the trademark POCKETMONEY is confusingly similar to MONEY.

Professor McCarthy then provides an incomplete list of five examples of such ways, cited by Microsoft in its brief. *McCarthy* § 30:57 (emphasis supplied).[2]

In the chapter of his treatise on the subject of remedies, Professor McCarthy devotes forty-two (42) sections to injunctive relief, twelve (12) to contempt and then fifty (50) sections to the subject of monetary damages. Of those fifty (50) sections on damages, four (4) are devoted to the corrective advertising theory of recovery for reverse confusion cases, including one in which the theory is criticized. *Id.* §§ 30:80-84. Although problematic, the corrective advertising theory remains the law of recovery for **classic** cases of trademark infringement by reverse confusion, such as this one. *Id.* § 30:82. Microsoft has not cited even one case overruling the corrective advertising theory.[3]

Here the damage alleged is that Catamount has lost its product identity, control over its goodwill and reputation, and ability to move into new markets. This situation alone entitles Catamount to injunctive relief. Even if Catamount's sales have increased as a

---

[2] Microsoft misleadingly states that "there are **only** five categories of monetary relief" MS FRCP 52 Brief at 3-4 (emphasis supplied).

[3] Microsoft's reliance on the District Court's decision in the case of *W.W.W. Pharmaceutical v. Gillette*, 808 **F.Supp.** 1013 (SDNY 1992), is inapposite. *See: W.W.W. Pharm. v. Gillette*, 984 **F.2d** 567 (2d Cir. 1993). In that case, the parties' products were noncompeting because W.W.W. sold lip balm and Gillette sold deodorant, and thus the conclusion that there was no likelihood of confusion ended the damages inquiry. Thus, as a practical matter for purposes of the *Polaroid* analysis, it was impossible for W.W.W. to show harm because the products did not compete. Here, of course, the products compete directly.

result of the consuming public associating POCKETMONEY with Microsoft, Catamount has still lost control of its trademark.

Microsoft should be held liable in damages for causing this loss of control. The appropriate measure of damages for this tort is a fraction of what the defendant spent on marketing the infringing trademark(s), or, creating the confusion. Because the wrong was committed knowingly and intentionally, an award of enhanced damages, costs and attorneys' fees is also warranted. *Getty Petroleum Corp. v. Island Transportation Corp.*, 862 F.2d 10, (2d Cir. 1988).

### IV.  Microsoft's Evidence of Its Good Faith Actually Proves Its Bad Faith Intent to Deprive Catamount of Its POCKETMONEY Trademark

Microsoft's employee Kevin Shields testified that he tested Catamount's POCKETMONEY to evaluate it. Shields Test. IV:19:20-IV:25:25. Microsoft's attorneys expressed their opinion that there is a likelihood of confusion between POCKETMONEY and MONEY FOR POCKET PC. Pl.Tr.Ex 19. The evidence shows that Microsoft has known all along that its course would damage (or obliterate) Catamount's valid trademark rights, but that it knowingly pursued a predatory business strategy anyway. Its assertions to the contrary, and its inexplicable misstatements of the applicable law, prove further bad faith. Microsoft has knowingly and intentionally committed the wrong of creating consumer confusion, and since then has knowingly and intentionally sought to create legal confusion.

Microsoft also asserts that because it did not have any intent to trade on Catamount's goodwill, it acted in food faith. But this assertion does not avail. In a reverse confusion case, the junior user functionally acquires rights to the mark, as opposed to capitalizing on the senior user's goodwill or reputation. This case presents such a classic reverse confusion fact pattern. By analogy, Goodyear had no intent to trade on Big O's goodwill: It just adopted the mark because it wanted the mark. If anything, Microsoft is more culpable than Goodyear because Goodyear only learned of Big O's use of BIGFOOT about a month before launching its infringing product. In contrast, Microsoft was aware of Catamount's use of POCKETMONEY for **years** before it released its infringing product. See: *Big O I*, 408 F.Supp. at 1227-1228.

Thus, intent to trade on the plaintiff's goodwill is simply **not** an element of a reverse confusion claim, and Microsoft cites no applicable precedent for this proposition.

Instead, as argued in Catamount's Pretrial and Mid-Trial Memoranda, it was Microsoft's substantial advance knowledge of, and subsequent intentional disregard for, Catamount's trademark rights that is evidence of Microsoft's bad faith in adopting the POCKET_____ naming convention.

Moreover, because of the incredible lengths to which it has gone by spending close to One-Hundred Million dollars ($100,000,000.00) to acquire secondary meaning in both of the terms

POCKET PC and MONEY, Microsoft has created the current situation in which consumer confusion as to the affiliation, connection, or association between the parties was made inevitable and did in fact occur.

As a direct result of this state of confusion caused by Microsoft's naming convention and massive advertising campaign, Catamount has been damaged by loss of its product identity, loss of control over its goodwill and reputation, and now is unable to move into new markets.

### V.  Catamount Has Presented New Evidence

At trial, Plaintiff presented testimony which was not before the Court for consideration of the Motions for Summary Judgment. This testimony bolsters Catamount's proof that Microsoft has infringed Catamount's trademark. In addition, Catamount submitted a number of trial exhibits which were not before the Court when the Motions for Summary Judgment were decided. For instance, this evidence includes examples of media misuse of the mark as well as more recent misuse by Microsoft. See: Pl.Tr.Ex. 20 & 23. Catamount has also presented evidence that the Court had not yet seen, notably Microsoft's trademark research and investigations into Mr. Macia and his counsel from 1998, which has been in the parties' files since Plaintiff's initial disclosures under

Fed.R.Civ.Pro. 26, but which had not yet been introduced into evidence. See: Pl.Tr.Ex. 15, 16, 17, 18.

Furthermore, Plaintiff has revised its analysis of all factors under the *Polaroid* test, as well as its theory of damages, to conform to the new evidence presented by both parties at trial. Thus the Court is not bound to any of the conclusions set forth in the Opinion and Order on the parties' Motions for Summary Judgment.[4]

## VI.  Conclusion

Microsoft's mid trial Motion for Judgment should be denied. Catamount has met its burden to prove that Microsoft has infringed Catamount's trademark because it has caused consumer confusion and mistakes as to the affiliation, connection, or association between the parties. Catamount has further introduced evidence upon which to base an award of damages under the only valid theory of damages for the torts of trademark infringement and disparagement by reverse confusion, to wit, the corrective advertising theory. Finally, Catamount has presented evidence that such infringement

---

[4] Fed.R.Civ.Pro. 54(b) provides: "In the absence of such determination [of judgment for one or more claims] and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties shall not terminate the action as to any of the claims or parties, and **the order or other form of decision is subject to revision at any time** before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis supplied)

and disparagement was undertaken knowingly and intentionally, justifying an award of enhanced damages, costs and attorneys' fees.

WHEREFORE Catamount respectfully requests that the Court deny Microsoft's Motion for Judgment under Federal Rule of Civil Procedure 52.

Dated at Burlington, Vermont this 13TH day of SEPTEMBER, 2004.

Catamount Software

By: *[signature]*

Markus Brakhan, Esq.
P.O. Box 5851
44 Church St., Suite 1
Burlington, VT 05402
(802) 660-8210

IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| HARLAND A. MACIA, III, D/B/A CATAMOUNT SOFTWARE, Plaintiff<br><br>v.<br><br>MICROSOFT CORPORATION, Defendant | Civil Action No.<br>2:00-CV-299 |

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the following document:

**CATAMOUNT'S RESPONSE TO MICROSOFT'S MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 52**

was filed with the Vermont United States District Court and was served upon the defendant Microsoft Corporation, by first class mail of the same to the court at Elmwood Ave., Burlington, Vermont 05402 and by mailing the same to defendant's attorneys at the following addresses:

Microsoft Corporation
John T. Brown, Esq.
Wildman et al.
225 West Wacker Drive, Suite 3000
Chicago, IL 60606

Jack Sartore, Esq.
Paul, Frank & Collins
P.O. Box 1307
Burlington, VT 05402-1307

DATED AT BURLINGTON, VERMONT THIS 15TH DAY OF SEPTEMBER, 2004.

BY: _____
MARKUS BRAKHAN, ESQ.
P.O. BOX 5851
44 CHURCH ST., SUITE 1
BURLINGTON, VT 05402
(802) 660-8210